## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES | |
| v. | No. 3:12-cr-97 (SRU) |
| JOSEPH RAO | |

## <u>ORDER</u>

On February 4, 2013, Rao pleaded guilty (pursuant to a plea agreement) to a lesser-included offense of count one of a superseding indictment charging him with conspiracy to distribute and to possess with intent to distribute oxycodone and cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. *See* Superseding Indictment, Doc. No. 410; Plea Agreement, Doc. No. 454. On June 6, 2013, Rao was sentenced by District Judge Ellen Bree Burns to a 91-month term of incarceration followed by five years of supervised release. *See* Min. Entry, Doc. No. 672; Judgment, Doc. No. 673. Rao's federal sentence was to run consecutively to a five-year state sentence that Rao was already serving. *See* Judgment, Doc. No. 673; Presentence Report ("PSR"), Doc. No. 622, at ¶ 2.[1] Rao, who is 61, is currently in federal custody and is housed at the Federal Correctional Institution, Beckley ("FCI Beckley"). *See Find an Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited

---

[1]     At sentencing, Rao faced a Guidelines range of 151-to-188 months' incarceration. However, at the time of sentencing in this federal matter, Rao was already serving a 60-month sentence for several state convictions, some of which regarded Rao's criminal conduct in this case. As a result, the parties agreed that a 60-month adjustment to Rao's Guidelines range was appropriate. Thus, Rao's adjusted Guidelines range was 91-to-128 months' incarceration. The parties also agreed that whatever sentence Judge Burns imposed, "assuming it incorporates an adjustment to account for the state sentence," would "run consecutively to the state sentence." Plea Agreement, Doc. No. 454, at 5. Rao's ultimate 91-month sentence in this matter thus represented the low end of his Guidelines range. *See generally* Plea Agreement, Doc. No. 454, at 4–5; PSR, Doc. No. 622, at ¶¶ 4, 84.

Aug. 23, 2021).  Rao's scheduled release date is May 14, 2023.[2]  *See id.*  Rao has been

incarcerated since October 2011 (then in state custody).  *See* PSR, Doc. No. 622, at ¶ 2.

On April 30, 2021, Rao filed a counseled motion for reduction in sentence pursuant to 18

U.S.C. § 3582(c)(1)(A)(i), as amended in 2018 by the First Step Act.  *See* Rao's Mot. for

Reduction in Sentence, Doc. No. 1287; Mem. of Law in Supp. Mot. for Reduction in Sentence

("Rao's Mot."), Doc. No. 1287-1.  On May 10, the government filed an opposition.  *See* Gov't

Opp'n, Doc. No. 1289.  On May 20, Rao filed a reply.  *See* Rao's Reply, Doc. No. 1293.  For the

following reasons, I **deny without prejudice** Rao's motion for relief and decline to alter his

sentence.[3]

I.      **Standard of Review**

The First Step Act of 2018 (the "FSA") amended the language of section 3582(c)(1)(A).

Before the FSA, only the Director of the Bureau of Prisons (the "BOP") could make a motion for

the court to reduce a defendant's sentence based on extraordinary and compelling reasons.  It is

widely acknowledged that the BOP fell short in its gatekeeper role and that, as a result, too few

inmates were granted compassionate release.  *See, e.g.*, U.S. Dep't of Justice, Office of the

Inspector General, Evaluation and Inspections Division, *The Federal Bureau of Prisons'*

*Compassionate Release Program* i (April 2013), https://oig.justice.gov/reports/2013/e1306.pdf

("[W]e found that the existing BOP compassionate release program has been poorly managed

---

[2]       Rao states that his expected release date is April 4, 2023.  *See* Mem. of Law in Supp. Mot. for Reduction in
Sentence, Doc. No. 1287-1, at 4.  However, as described above, the BOP's website indicates that Rao's expected
release date is May 14, 2023.  Possibly, Rao's expected release date changed between when he filed his motion and
today.  In any event, the inconsistency is inconsequential because, as I explain below, Rao has not established that
extraordinary and compelling circumstances warrant relief.
[3]       Although Rao "requests oral argument on his motion and asks that the court schedule a hearing," Rao's
Mot. for Reduction in Sentence, Doc. No. 1287, at 1, in my view, a hearing is unnecessary.  Numerous courts have
ruled on prisoners' compassionate release motions without holding a hearing.  *See, e.g.*, *United States v. Garcia*,
2021 WL 488335, at *1 (S.D. Cal. Feb. 10, 2021); *United States v. Colon*, 2020 WL 6049215, at *1 n.1 (D. Conn.
Oct. 12, 2020).

and implemented inconsistently, likely resulting in eligible inmates not being considered for release and in terminally ill inmates dying before their requests were decided."); Shon Hopwood, *Second Looks & Second Chances*, 41 CARDOZO L. REV. 83, 105–06 (2019); William W. Berry III, *Extraordinary and Compelling: A Re-Examination of the Justifications for Compassionate Release*, 68 MD. L. REV. 850, 868 (2009) (noting that, in the 1990s, 0.01 percent of inmates annually were granted compassionate release).

Congress passed the FSA against that backdrop.  The FSA altered section 3582(c)(1)(A), in part, to increase the use of compassionate release.  *See* 164 Cong. Rec. H10358 (daily ed. Dec. 20, 2018) (titling changes to section 3582(c)(1)(A) as "Increasing the Use and Transparency of Compassionate Release").  In particular, the FSA amended section 3582(c)(1)(A) to allow a defendant him- or herself to bring a motion for compassionate release.  Section 3582(c) now reads, in relevant part:

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that – (1) in any case –

>> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that –

>>> (i)  extraordinary and compelling reasons warrant such a reduction; . . .

>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

For some time, I (and many other district courts around the country) interpreted the "applicable

policy statement[] issued by the Sentencing Commission" to be U.S.S.G. § 1B1.13.  *See, e.g.*,

*United States v. Almontes*, 2020 WL 1812713, at *2 (D. Conn. Apr. 9, 2020).

However, in September 2020, the Second Circuit clarified that section 1B1.13 is not

applicable to compassionate release motions brought by defendants themselves.  *See United

States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020).  Since the Second Circuit decided *Brooker*,

several courts of appeals in other circuits have concurred that section 1B1.13 is not applicable to

compassionate release motions brought by defendants.  *See United States v. McCoy*, 981 F.3d

271, 281 (4th Cir. 2020); *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021); *United

States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180

(7th Cir. 2020); *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021); *United States v.

McGee*, 992 F.3d 1035, 1050 (10th Cir. 2021); *United States v. Long*, 997 F.3d 342, 347 (D.C.

Cir. 2021); *but see United States v. Bryant*, 996 F.3d 1243, 1252–62 (11th Cir. 2021).  Because

in this case Rao himself made a motion for compassionate release, I may "consider the full slate

of extraordinary and compelling reasons," and nothing in the "now-outdated version" of section

1B1.13 limits my discretion.  *Brooker*, 976 F.3d at 237.

The defendant bears the burden of proving that he is entitled to a sentence reduction.  *See

United States v. Morales*, 2020 WL 2097630, at *2 (D. Conn. May 1, 2020).  Courts "have broad

discretion in deciding whether to grant or deny a motion for a sentence reduction."  *United States

v. Jones*, 2020 WL 2782395, at *2 (D. Conn. May 29, 2020) (quoting *United States v.

Tagliaferri*, 2019 WL 6307494, at *3 (S.D.N.Y. Nov. 25, 2019)).  Indeed, section 3582(c)(1)(A)

grants a district court permissive authority to reduce an inmate's sentence under certain

conditions.  *See* 18 U.S.C. § 3582(c)(1)(A) ("[T]he court . . . may reduce the term of

imprisonment . . . ."). A court may not reduce a term of imprisonment without "considering the factors set forth in section 3553(a) to the extent that they are applicable." *Id.*; *see also United States v. Torres*, 464 F. Supp. 3d 651, 658 (S.D.N.Y. 2020) (explaining that courts must consider section 3553(a) factors before granting a sentence reduction pursuant to section 3582(c)(1)(A)).

## II.   Discussion

### A.   Background

On April 1, 2011, Rao was arrested by the New Haven Police Department during a sale of oxycodone. *See* PSR, Doc. No. 622, at ¶ 17. The arrest resulted from a year-long investigation, headed by the Drug Enforcement Administration, targeting narcotics trafficking and gang violence in the Dwight-Kensington and Fair Haven sections of New Haven. *See id*. at ¶ 8. During the investigation, law enforcement monitored wiretaps on over 20 different cell phones. *See id*. at ¶ 9. Intercepted communications revealed that Rao was one of many individuals involved in the distribution of large quantities of cocaine, cocaine base, marijuana, and oxycodone. *See id*. at ¶ 13. During Rao's arrest, officers recovered $9,661 and over 100 oxycodone pills from Rao's person and vehicle. *See id*. at ¶ 17.

Sadly, Rao's history of drug addiction began early. At age 12, Rao began using marijuana; by age 14, he was "sniffing heroin and cocaine daily" and using heroin intravenously. *Id.* at ¶ 66. By age 15, Rao had "developed a drug habit which included using speed, downers, uppers and acid." *Id.* at ¶ 60 (cleaned up). Rao continued to use drugs heavily in his adulthood: In the 1990s (Rao's thirties), Rao was using crack cocaine multiple times per week. *See id.* at ¶ 66. And after suffering a work-related injury in 2009, Rao began taking twenty 30-milligram oxycodone pills per day. *See id.* Throughout his life, Rao has relied on criminality to fund his drug dependencies. *See id.* at ¶¶ 61, 66. As a result, Rao has been in and out of prison

5

consistently since age 18.  *See id.* at ¶¶ 34–57, 60–61.  Rao has stated that "drugs have caused

him to 'lose everything including [his] dignity, [his] family.  [He] has no sense of morals while

doing drugs.'"  *Id.* at ¶ 67.

Rao has lived with HIV since 1993.  *See* Rao's Mot., Doc. No. 1287-1, at 4; PSR, Doc.

No. 622, at ¶ 61; Medical Records, Ex. E to Rao's Mot. ("Rao's Medical Records"), Doc. No.

1287-2, at 14 (indicating that Rao is "HIV asymptomatic (never had an HIV-related illness)").

As a result, Rao has a somewhat-diminished count of CD4 cells, which help to fight off

infection.  *See* Rao's Mot., Doc. No. 1287-1, at 4; Rao's Sealed Medical Records, Doc. No.

1288-1, at 62.[4]  Other medical conditions impact Rao's health as well.  In 2020, Rao was

diagnosed with an unspecified mental disorder which causes him lack of sleep and nightmares.

*See* Rao's Mot., Doc. No. 1287-1, at 5; Rao's Medical Records, Doc. No. 1287-2, at 13.  Rao is

also being monitored for chronic obstructive pulmonary disease, a lung disease that is likely

connected to Rao's decades of smoking.  *See* Rao's Mot., Doc. No. 1287-1, at 5; Rao's Medical

Records, Doc. No. 1287-2, at 16.  Rao claims that he has a "history of hypertension which he

attempts to control with diet in order to avoid taking medication."  Rao's Mot., Doc. No. 1287-1,

at 5; Rao's Sealed Medical Records, Doc. No. 1288-1, at 32.  And Rao is in remission for

Hepatitis C.  *See* Rao's Mot., Doc. No. 1287-1, at 5; Rao's Medical Records, Doc. No. 1287-2, at

14.  Fortunately, in January and February 2021, Rao received two doses of the Moderna COVID-

19 vaccine.  *See* Rao's Sealed Medical Records, Doc. No. 1288-1, at 38.

---

[4]     Rao filed portions of his medical records on this case's public docket and more substantial medical records
under seal.

B.  The Parties' Arguments[5]

Rao argues that he meets the criteria for compassionate release under the First Step Act.

Rao presents three main arguments to support the conclusion that his vulnerability to COVID-19

is an extraordinary and compelling reason that warrants the reduction of his current sentence.

First, Rao argues that the BOP has failed to protect inmates from the spread of COVID-

19.  *See* Rao's Mot., Doc. No. 1287-1, at 15.  When Rao filed his motion, 981 out of 2,523

inmates within the entire FCI Allenwood complex[6] had been vaccinated.  *See id.* at 17.  Since

then, the number of vaccinated inmates at FCI Allenwood has grown to 1,626.[7]  *See COVID-19*,

FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Aug. 23, 2021).

Although Rao acknowledges that no inmates or staff at FCI Allenwood currently have COVID-

19,[8] he argues that "that does not mean no inmate will become ill in the future."  Rao's Reply,

Doc No. 1293, at 4.  If there were a future outbreak at his facility, Rao fears that the BOP lacks

the resources required to provide adequate medical support, particularly for those individuals at

higher risk of infection.  *See* Rao's Mot., Doc. No. 1287-1, at 26.

Second, Rao argues that his poor health conditions, particularly in the context of the

pandemic, amount to an extraordinary and compelling reason justifying compassionate release.

*See id.* at 27.  Rao contends that his current health status—most significantly his HIV

---

[5]      Both parties agree that, for purposes of this motion, Rao has satisfied section 3582(c)(1)(A)'s statutory exhaustion requirement.  *See* Rao's Mot., Doc. No. 1287-1, at 8; Gov't Opp'n, Doc. No. 1289, at 5.

[6]      Apparently, Rao was in custody at FCI Allenwood Low when he filed his motion.  *See* Rao's Mot., Doc. No. 1287-1, at 5; Gov't Opp'n, Doc. No. 1289, at 8.  However, BOP online records indicate that Rao is now in custody at FCI Beckley.  Ultimately, because both facilities currently appear to have COVID-19 under control, that inconsistency is inconsequential.  *See COVID-19*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (indicating, as of August 23, 2021, that Allenwood Low FCI had zero active COVID-19 cases and that FCI Beckley had one active case).

[7]      FCI Beckley has apparently vaccinated 1007 inmates out of its total inmate population.  *See COVID-19*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Aug. 23, 2021).

[8]      As described above, *see supra* n.6, as of August 23, 2021, no inmates or staff at FCI Allenwood Low were testing positive for COVID-19, and one inmate at FCI Beckley was testing positive.

diagnosis—places him "at extremely high risk for severe illness or death should he contract COVID-19." *Id.* Rao draws attention to cases—decided during the early stages of the COVID-19 pandemic—in which inmates with similar health conditions were released from federal custody. *See Bruno v. United States*, 472 F. Supp. 3d 279, 284 (E.D. Va. 2020) (granting HIV-positive inmate's motion for compassionate release, in part, because "the symptomatic overlap between the opportunistic infections that can be deadly for HIV-positive individuals and COVID-19 is unmistakable"); *United States v. West*, 2020 WL 6150932, at *7 (D. Md. Oct. 20, 2020) ("[N]umerous courts have found that, in light of the COVID-19 pandemic, serious chronic medical conditions, including HIV, . . . qualify as a compelling reason for compassionate release."). Rao also directs my attention to certain courts that have granted compassionate release to individuals without serious underlying health issues based on other considerations, such as "to serve penal interests or to promote health and safety of the inmate." Rao's Mot., Doc. No. 1287-1, at 29.[9]

Third, Rao emphasizes that, even when fully vaccinated, he remains at risk of contracting COVID-19. *See* Rao's Reply, Doc. No. 1293, at 3. More specifically, Rao argues that the Moderna vaccine provides only "partial protection and will likely not protect him against dangerous new variants." Rao's Mot., Doc. No. 1287-1, at 31–32. To bolster that argument, Rao points out that certain courts have granted compassionate release motions to *unvaccinated*

---

[9]     Importantly, the cases that Rao cites in support of that proposition concern pretrial detainees who made motions for temporary release. *See, e.g., United States v. Davis*, 449 F. Supp. 3d 532, 537 (D. Md. 2020); *United States v. Le*, 457 F. Supp. 3d 6, 8 (D. Mass. 2020). Pretrial detainees' motions for release on bail differ in important ways from sentenced prisoners' motions for reduced sentences. The cases' procedural postures differ: Pretrial release does not terminate an imposed sentence. And the statutory frameworks differ: Although section 3582(c)(1)(A) of the FSA governs sentenced prisoners' motions for reductions in sentence, the Bail Reform Act governs pretrial detainees' motions for temporary release on bond. *See, e.g., United States v. Khusanov*, 731 F. App'x 19, 20 (2d Cir. 2018) ("The Bail Reform Act permits a district court to order pretrial detention only if it finds 'that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.'") (quoting 18 U.S.C. § 3142(e)(1)).

inmates based on the possibility that they may be infected in the future.  *See United States v. Ramirez*, 2021 WL 168594, at *4 (E.D. Mich. Jan. 19, 2021) (granting compassionate release to previously infected inmate and noting that "[w]hether he is subject to re-infection and, if so, more serious illness the second time, remain relative unknowns"); *United States v. Hargrove*, 2021 WL 170836, at *7 (D. Conn. Jan. 19, 2021) (granting compassionate release to unvaccinated inmate and acknowledging uncertainty regarding when that inmate might be vaccinated were he to remain in custody).  And Rao states that so long as he remains incarcerated it is impossible to properly socially distance from others.  *See* Rao's Reply, Doc. No. 1293, at 2.

Rao also argues that a sentence of time served is sufficient to accomplish the goals of sentencing.  *See* Rao's Mot., Doc. No. 1287-1, at 34.  According to Rao, his positive record in prison suggests that further incarceration is not necessary to achieve deterrence, protect the public, or promote respect for the law.  *See id.* at 36.  To support his argument, Rao points out that he was convicted of a non-violent offense, has completed several educational programs while incarcerated, and has successfully remained sober for over four years.  *See id.* at 35. Regarding his release plan, Rao indicates that he "will accept placement in a halfway house and will begin a period of home confinement."  *Id.* at 40.  If no bed is available in a halfway house, Rao asserts that "he may temporarily reside with Donna Perrelli, his ex-wife, at her residence located in Branford."  *See id.*  Notably, at the time the United States Probation Office prepared Rao's PSR in this case, Rao "stated he does not have contact" with Perrelli.  *See* PSR, Doc. No. 622, at ¶ 63.[10]

---

[10]   Although it is not ultimately important to the resolution of Rao's motion, I note that Rao does not adequately address how his concurrent state sentence might further complicate my consideration of his motion.  In August 2015, while serving the instant sentence in federal custody, Rao pleaded guilty to two crimes (burglary in the third degree and larceny in the first degree) that he had committed in 2011.  *See Criminal/Motor Vehicle Conviction Case Detail*, STATE OF CT JUD. BRANCH (Aug. 21, 2021, 5:07 AM), https://www.jud2.ct.gov/crdockets/DocketNoEntry.aspx?source=Disp (Docket Number N07M-CR14-0281160-S). In October 2016, a state court sentenced Rao to 20 years' imprisonment, suspended after seven years, for the larceny

In the government's view, Rao has not established extraordinary and compelling reasons justifying a reduced sentence.  That is because Rao is not in danger of becoming severely ill from the novel coronavirus:  The conditions at FCI Allenwood (and FCI Beckley) are safe, and the protection provided by the Moderna vaccine is strong.  Regarding the conditions at FCI Allenwood, the government suggests that current data indicates that the BOP has adequately responded to any outbreaks that may have previously occurred.  *See* Gov't Opp'n, Doc. No. 1289, at 8.  And the same holds true at FCI Beckley.  *See COVID-19*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Aug. 23, 2021).  Regarding the vaccine, the government notes that the Moderna vaccine is highly protective against COVID-19 and that Rao's concerns to the contrary are speculative.  *See id.* at 7.  Indeed, the government cites numerous cases in which courts have denied compassionate release motions, at least in part, because the inmate had been fully vaccinated.  *See, e.g., United States v. Torres*, 2021 WL 1687502, at *3 (S.D.N.Y Apr. 28, 2021); *United States v. Nkanga*, 2021 WL 1601076, at *2 (S.D.N.Y. Apr. 23, 2021); *United States v. Poupart*, 2021 WL 917067, at *1 (D. Conn. Mar. 10, 2021).  And, according to the government, courts routinely reject inmates' arguments that potential COVID-19 variants reduce the vaccines' import.  *See United States v. McBriarty*, 2021 WL 1648479, at *6 (D. Conn. Apr. 27, 2021) (dismissing as "speculative and unpersuasive" the argument that the emergence of COVID-19 variants renders vaccines ineffective).

---

crime and five years' imprisonment for the burglary crime.  *See id.*  Apparently, those state sentences were to run concurrently with Rao's federal sentence.  *See* Rao's Mot., Doc. No. 1287-1, at 3.  Rao claims that he is eligible for parole with respect to his remaining state sentence.  *See id.* at 3 n.1.  However, the existence of Rao's concurrent state sentence—and the fact that he may or may not have more of it to serve were I to order that he be released from federal custody—is a complicating factor that Rao does not adequately address in his motion.  Rao's concerns regarding COVID-19 would apply equally if he were held in state custody, and I have no power to reduce his state sentence on this motion for a reduced sentence pursuant to section 3582.  *See Gulley v. Ogando*, 2020 WL 1863276, at *1 & n.2 (D. Conn. Apr. 13, 2020).

Although the government argues I need not reach them, the government defers to me regarding whether the section 3553(a) factors warrant relief. The government "applauds the positive steps Rao has undertaken while serving his federal sentence, including obtaining a General Equivalency Diploma, completing several BOP educational programs, participating in the residential drug treatment program, and planning for his eventual release." Gov't Opp'n, Doc. No. 1289, at 9. But the government also points to two incident reports, incurred during Rao's incarceration, one of which involved "threatening body harm." *Id.*[11]

C. Evaluation[12]

I will not reduce Rao's sentence because he has not established that extraordinary and compelling reasons warrant such a reduction.

Most importantly, because Rao has been fully vaccinated against COVID-19, his vulnerability to COVID-19 does not amount to an extraordinary and compelling reason to reduce his sentence. "[C]ourts in this circuit have found that vaccination mitigates the risk an inmate faces from COVID-19 to the point that his health conditions weighing in favor of release are no

---

[11]     Rao emphasizes that the most recent incident report "occurred more than twelve months ago." Rao's Reply, Doc. No. 1293, at 5.

[12]     At points, Rao claims that his being forced to remain in prison may amount to an Eighth Amendment violation. *See, e.g.*, Rao's Mot., Doc. No. 1287-1, at 37–40. The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *See Wilson v. Seiter*, 501 U.S. 294, 296–97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Although the Constitution does not require "comfortable" prison conditions, the Eighth Amendment imposes certain duties on prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care" and to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (cleaned up). To state an Eighth Amendment claim based on unlawful conditions of confinement, an inmate must demonstrate both an objective and a subjective element. To meet the objective element, an inmate must allege that he was incarcerated under conditions that resulted in a "sufficiently serious" deprivation, such as the denial of a "life[] necessit[y]" or a "substantial risk of serious harm." *Id.* at 834 (cleaned up). To meet the subjective element, an inmate must allege that the defendant prison officials possessed culpable intent; that is, the officials must have known that the plaintiff faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *See id.* at 834, 837. Thus, an allegation of "mere negligence" is insufficient. *Id.* at 835. Rather, the subjective element requires that a plaintiff allege that prison officials acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord,* 467 F.3d 263, 280 (2d Cir. 2006).

          Rao has not established an Eighth Amendment violation. Even assuming for purposes of this motion that the threat of COVID-19 to a vaccinated person satisfies the objective prong, in my view, Rao has not satisfied the subjective prong because he has not shown that the BOP has exhibited subjective recklessness towards him.

longer extraordinary and compelling." *United States v. Kosic*, 2021 WL 1026498, at *2 (S.D.N.Y. Mar. 17, 2021); *see also McBriarty*, 2021 WL 1648479, at *6 ("Given that McBriarty has now been vaccinated, his purported underlying medical conditions . . . do not help constitute an extraordinary and compelling reason warranting relief.").  District courts in other circuits have come to the same conclusion.  *See, e.g., United States v. Harris*, 2021 WL 1516012, at *2 (D. Md. Apr. 16, 2021) (acknowledging and joining the "vast majority of other courts who have ruled, on the basis of present understanding, that the highly effective available vaccines dramatically affect whether an inmate's medical conditions constitute the 'extraordinary and compelling reason' required to further consider compassionate release"); *United States v. Smith*, 2021 WL 1890770, at *3 (E.D. Cal. May 11, 2021) ("[D]istrict courts across the country . . . have held almost uniformly that a defendant's vaccination undercuts any claims of 'extraordinary and compelling reasons' based on a high risk of infection."); *United States v. Singh*, 2021 WL 928740, at *3 (M.D. Pa. Mar. 11, 2021) (denying a motion for compassionate release because the vaccinated inmate "now has significant protection against serious illness or death should he contract COVID-19"); *United States v. Cheatham*, 2021 WL 2659825, at *2 (E.D. Mich. June 29, 2021) (adhering "to the well-established point that there is no extraordinary and compelling reason to gran[t] a vaccinated inmate compassionate release").

Rao's attempt to emphasize the mere possibility of future infection is speculative and runs counter to current scientific understanding.  *See Variants of the Virus*, CTRS. FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/variants/variant.html (updated Aug. 6, 2021) ("FDA-authorized COVID-19 vaccines protect against Delta and other

known variants.").[13]  In any event, as explained below, I deny Rao's motion without prejudice. If scientific understanding significantly shifts, Rao will be able to re-file his motion.

Rao's risk of becoming severely ill from COVID-19 is even more remote because the pandemic appears to be under control at FCI Beckley, where there is one active case among inmates and staff.  *See Covid-19*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Aug. 23, 2021).  In fact, a substantial percentage of the inmate population at FCI Beckley—approximately 65 percent—is fully vaccinated.  *See id.* (indicating that FCI Beckley has vaccinated 1007 inmates); *see also FCI Beckley*, FED. BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/bec/ (reporting that FCI Beckley had a total inmate population of 1,559) (last visited Aug. 23, 2021).  Although, as a general matter, conditions of incarceration no doubt present challenges for those attempting to socially distance from others, present circumstances suggest that it is unlikely that Rao will be exposed to the virus if he remains at FCI Beckley.

Because I conclude that Rao has not established that extraordinary and compelling reasons warrant a reduction in his sentence, I need not consider whether such a reduction would be consistent with the section 3553(a) sentencing factors.  *See United States v. Moyhernandez*, 5 F.4th 195, 198 (2d Cir. 2021) ("[C]onsideration of the [section] 3553(a) factors is not required on review of a motion brought pursuant to [section] 404 of the First Step Act—though it is certainly permitted.").

---

[13]    Relatedly, the cases that Rao cites to support his view of the diminished importance of vaccines are inapposite.  For example, the concern, emphasized in *Ramirez*, that an unvaccinated inmate who contracted COVID-19 might be susceptible to reinfection is irrelevant; Rao is vaccinated and has never been infected.  *See Ramirez*, 2021 WL 168594, at *4.  And Rao cites *Hargrove* to support the proposition that an inmate's inoculation "does not negate the extraordinary and compelling reasons for a sentence reduction."  Rao's Mot., Doc. No. 1287-1, at 32. But *Hargrove* does not stand for that proposition.  Instead, although that court granted an unvaccinated inmate's motion for release, the court also acknowledged that "[v]accination from the virus would undercut the argument that release to home confinement to prevent [the inmate] from contracting the virus constitutes 'extraordinary and compelling' reasons to modify his sentence."  *Hargrove*, 2021 WL 170836, at * 7.

13

### III.      Conclusion

Rao bears the burden of demonstrating that an extraordinary and compelling reason justifies a reduced sentence.  For the reasons identified above, Rao has not carried that burden, so I **deny** his motion for a reduction in sentence, doc. no. 1287.  However, I deny Rao's motion without prejudice to renewal if circumstances dramatically change—such as if current scientific understanding evolves or if the situation at FCI Beckley spirals out of control.

IT IS SO ORDERED.

Dated at Bridgeport, Connecticut, this 23d day of August 2021.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge